Matter of D.T. (2005 NY Slip Op 51658(U))

[*1]

Matter of D.T.

2005 NY Slip Op 51658(U) [9 Misc 3d 1118(A)]

Decided on September 27, 2005

Family Court, Rockland County

Christopher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 27, 2005

Family Court, Rockland County
In the Matter of D.T., a Child under Eighteen Years of Age Alleged to be Neglected by A.T., Respondent.
XXXXX

Linda Christopher, J.
This proceeding was commenced by the filing of a child abuse petition on June 13, 2005. The allegations in the petition allege that the subject child, D.T., born November 27, 2002, suffered serious injuries to his face on June 9, 2005, when he was 2 ½ years old, during the time when he was in the care of the respondent-father.
On August 16, 2005, the respondent-father moved this Court by Order to Show Cause for an order pursuant to Family Court Act §1038(c), directing that D.T., the subject child, be made available for psychological examination by Dr. Jeffrey Goidel, the psychologist selected by the respondent-father. In support of the application is an affirmation of the attorney for the
 respondent-father with a supporting affidavit of Dr. Goidel and a supporting affidavit of the child's paternal uncle. The Order to Show Cause was returnable on September 7, 2005. The attorney for the Rockland County Department of Social Services and the law guardian each submitted an Affirmation in Opposition to respondent-father's application. On September 7, 2005, a Reply Affirmation by respondent-father's attorney and a reply affidavit of Dr. Goidel was submitted in further support of the application. On September 14, 2005, the law guardian submitted an Affirmation in Reply in opposition to the Affirmation in Reply submitted by respondent-father's attorney. The Court declines to consider the law guardian's Affirmation in Reply inasmuch as same was submitted by facsimile, one week subsequent to the return date of the Order to Show Cause. Additionally, the CPLR does not provide for Affirmations in Reply in Opposition to the movant's reply. See, CPLR §2214(b).
In the instant matter the petitioner alleges that the respondent-father's explanations are not plausible as to how the child's injuries occurred on June 9, 2005. It appears that the petitioner will attempt to make a prima facie showing of abuse, by presenting proof that the injuries sustained by the child are of such a nature as would ordinarily not be sustained except by reason of the acts of the respondent-father. See, Family Court Act §1046(a)(ii). If a prima facie case is made, the burden [*2]will then shift to the respondent-father to offer an adequate explanation for the occurrence of the injuries. See, In the Matter of Aniyah F., 13 AD3d 529, 788 NYS2d 119 (2d Dept. 2004); In the Matter of Richard S., 204 AD2d 636, 612 NYS2d 217 (2d Dept. 1994). The respondent-father claims that he has always maintained that he had taken the garbage out and was not inside the house when the child was injured. He contends that the different explanations he had originally offered as to how the injuries occurred were merely speculative and that on June 23, 2005 when the child was interviewed by the caseworker the child told her that he had fallen down the stairs. Thus, respondent-father claims that the child's statements could exonerate him and that his ability to prepare his defense is dependent upon having the child examined by a psychologist to determine if in fact, the child can accurately report an event and specifically, whether he has accurately reported the event that allegedly caused his injuries. The respondent-father also alleges that this examination is necessary because "the outcome of the proceedings will have enormous ramifications to him, to his family and to his career as an educator."
In opposition to respondent-father's application the law guardian claims, inter alia, that Dr. Goidel would not be able to ascertain whether the child is accurately reporting the event surrounding his injuries; that due to the suggestibility of children of this age, and different factors that may have influenced the child, Dr. Goidel's examination may not have any value; and that the court must hold a hearing on the instant application for respondent-father to prove that the examination requested is generally accepted in the scientific community and has probative value, that the child's statements are not subject to manipulation and that the results are not variable for his age group. The attorney for the Rockland County Department of Social Services claims that denial of respondent-father's application is appropriate in the case at bar, inter alia, because neither the agency nor the law guardian relied on the statement of the child and the child was not interviewed by an expert for either of them; because the respondent-father failed to show need for an expert to examine the child and he did not show that such an examination would not be harmful to the child; because Dr. Goidel is not experienced in evaluating a child's cognitive ability along with the reliability of statements made by a child who is allegedly abused or neglected; and because the respondent-father failed to show the potential benefit to the truth finding process of permitting the child to be examined, as no evidence was provided that this type of examination is generally accepted by experts in the scientific community in the field of psychology. Both the law guardian the attorney for the Department of Social Services request that if the Court were to determine that the benefits of an examination of the child outweigh the harm, then the examination should be performed by a neutral expert.
 Pursuant to Family Court Act §1038(c)
A respondent or law guardian may move for an order directing that any child who is the subject of a proceeding under this article be made available for examination by a physician, psychologist or social worker selected by such party or law guardian. In determining the motion, the court shall consider the need of the respondent or law guardian for such examination to assist in the preparation of the case and the potential harm to the child from the examination.
Family Court Act §1038(c).
In a child protective proceeding wherein a father was alleged to have sexually abused his minor child, regarding an application by the respondent-father for an examination of the child by an expert of his choice, the Court of Appeals wrote, "[t]he statute is designed to enhance procedural fairness [*3]and the fact-finding process, particularly in cases where the petitioner's proof will depend substantially on expert opinion. (NY State Assembly mem., Bill No. A 7486-A.)" In the Matter of Jessica R., 78 NY2d 1031, 1033, 581 NE2d 1332, 576 NYS2d 77 (1991). When an application pursuant to §1038(c) of the Family Court Act is brought before the court, the court must exercise its sound judgment, after weighing all the factors to determine in its discretion, whether the potential benefit to the applicant and to the truth finding process outweighs the potential harm to the child. In the Matter of Jessica R., 78 NY2d 1031. The court has an obligation to obtain as much information as possible to make a reliable decision, without exposing the child to undue harm, [In re Tamara G., 295 AD2d 194, 745 NYS2d 6 (1st Dept. 2002)], and when "there [is] a demonstrated need, and no evidence that the [child will] suffer any appreciable additional harm", a respondent's request to have an expert conduct an examination of the child should be granted. See, In re Fatima, 16 AD3d 263, 273, 793 NYS2d 329 (1st Dept. 2005). 
 In turning to the instant matter, the thrust of petitioner's case is that the respondent-father's explanations of how the injuries occurred are not plausible, and that the injuries sustained by the child on June 9, 2005 are of such a nature as would not be sustained except by reason of the acts of the respondent-father. It is very likely that the petitioner will be relying on the expert testimony of Dr. Jocelyn Brown, or another expert, to support its position. If the petitioner makes a prima facie case, respondent-father's defense will depend on his ability to successfully offer an explanation as to how the injuries occurred. The respondent-father is claiming that his prior explanations as to how the child's injuries occurred were merely speculation, and that it is the child in this matter, (who was 2 ½ years old when the injuries occurred on June 9, 2005), who can allegedly provide the necessary explanation as to how he was injured, because on June 23, 2005 the child reported to the case worker that he fell down the stairs. Thus, it appears that the respondent-father's defense is largely, if not wholly, dependent on the child's statement, and an examination of the child to determine whether the child is an accurate reporter and whether he accurately reported that event would be critical to respondent-father's preparation of his defense.
The expert testimony of a psychologist who has examined the child may assist the court in assessing the value, if any, to give to the child's statements, and thus the truth finding process would be enhanced. Ultimately, based on all the evidence presented, the court will determine what weight, if any, is to be given to the child's alleged statement and to the expert's testimony. The issues raised by the law guardian and the attorney for the Department of Social Services with regard to whether the examination the expert will perform is generally accepted in the scientific community and has probative value, are issues that would be appropriately addressed at trial, subsequent to the performance of the examination and are not a basis to deny respondent-father's request for an examination requested pursuant to Family Court Act §1038(c).
Based on the facts of this matter, the Court finds that respondent-father has demonstrated the need for the child to be examined in order to assist him in the preparation of his case, and the benefit of said examination to the truth finding process.
Next, the Court must consider the potential harm to the child from having to submit to the examination. The affirmations of the law guardian and the attorney for the Department of Social Services submitted in opposition to respondent-father's application are devoid of any evidence to suggest that an examination in and of itself would be potentially harmful to D. Additionally, this is a very young child, who has not been extensively interviewed. However, the Court finds that due [*4]to the particular facts of this matter, an examination performed by respondent-father's expert, (as opposed to a neutral expert), could potentially harm the child. One of the specific purposes of the examination requested by the respondent-father is to help determine, because of the child's very young age, the reliability of the statement made by him regarding the circumstances surrounding the occurrence of his injuries. The Court finds that the child's very young age, in conjunction with the purpose of the examination, and the fact that the examination could require numerous sessions, militate against having this examination performed by an expert hired by the respondent-father. While the Court is not questioning Dr. Goidel's ethical and professional standards, he would be the respondent-father's paid expert. As respondent-father admitted in his Reply to the Court, the respondent-father's paid expert's main function would be to assist him in preparing for his defense. If, over the course of possibly numerous sessions with the child, the paid expert were to unintentionally cause this very young child to believe that the events surrounding the occurrence of his injury were not what, in truth, did occur, this would potentially have serious detrimental effects to the child's well-being; or, assuming arguendo, that the child were to disclose to respondent-father's paid expert that the petitioner's allegations are in fact true, there is certainly a potential for harm to the child, inasmuch as respondent-father's expert has no obligation to disclose this information in the context of this proceeding, and due to the young age of the child, it is possible that this information would never be revealed again. Communications by the child to an expert hired by the respondent-father to assist his attorney in preparing the defense of this proceeding would be protected from disclosure as part of the attorney's work product and/or materials prepared in anticipation of litigation or for trial. See, CPLR 3101(c); CPLR 3101(d)(2); In the Matter of Rebecca B., 227 AD2d 315, 642 NYS2d 685 (1st Dept. 1996) [subpoena demanding testimony of social worker hired by law guardian properly quashed]. The Court also notes that the child in this matter has not been interviewed by an expert for the petitioner or the law guardian, and therefore respondent-father's expert would be the only expert who would be interviewing the child. Thus the only context under which the examination of this child by respondent's-father's expert would not possibly harm the child is if respondent-father did not commit the alleged abuse. While the Court has made no finding of abuse, the Court is, nevertheless, unwilling to place the young child in the position of possible harm. An examination of the child by a neutral expert will assist the court in the truth finding process, but will avoid the serious potential dangers posed by having the examination performed by the respondent-father's expert.
Therefore, while the Court finds that in the instant matter the benefits of an examination of the child outweigh the potential harm to the child, that finding is restricted to an evaluation performed by a neutral expert.
Based on the foregoing , respondent-father's application is granted to the extent that the child shall be made available for examination by an expert, but said expert shall be a neutral appointed by the court, and respondent-father's application to have the child examined by Dr. Jeffrey Goidel is hereby denied. To effectuate this order, counsel shall each submit the names and curriculum vitae of three psychologists on or before Friday, September 30, 2005, from which list the court will make an appointment. In the event that respondent-father does not wish to have a neutral expert examine the child, then on or before Friday, September 30, 2005, his attorney shall so advise the court, and this motion shall be deemed denied in its entirety.
The foregoing constitutes the Decision and Order of this Court.
[*5]
E N T E R
Dated: New City, NY 
 September 27, 2005 HON. LINDA CHRISTOPHER